**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PIPEFITTERS LOCAL 636 INSURANCE FUND,
TRUSTEES OF THE PIPEFITTERS LOCAL 636
INSURANCE FUND, GERALD HOOVER,
JOSEPH BOURGEOIS, CARL EVANS,
JOHN R. GREEN, GREG SIEVERT,
FRANK WIECHERT
on behalf of themselves and
all other members of the class described herein,

      Plaintiffs

v.
                                    Case No. 04-73400
                                    HON. ARTHUR J. TARNOW

BLUE CROSS AND BLUE SHIELD OF MICHIGAN,

      Defendant
                                    <u>**CLASS ACTION**</u>

                                    <u>**DEMAND FOR JURY TRIAL**</u>

_____/

**SHARON ALMONRODE (P33938)**
**MICHAEL J. ASHER (P39347)**
SULLIVAN, WARD, ASHER & PATTON, PC
Attorneys for Plaintiffs
1000 Maccabees Center
25800 Northwestern Highway
P. O. Box 222
Southfield, MI  48037-0222
(248) 746-0700
_____/

<u>**SECOND AMENDED COMPLAINT AND**</u>
<u>**MOTION FOR CLASS CERTIFICATION**</u>

NOW COME the above-captioned Plaintiffs, for themselves and all other members of the class described below, by and through their attorneys, SULLIVAN, WARD, ASHER & PATTON, P.C., and for their Second Amended Complaint and Motion for Class Certification, state:

## NATURE OF THE ACTION

1.      This is an action for violation of the Employment Retirement Income Security Act of 1974 as amended, 29 U.S.C. § 1001, et. seq. ("ERISA"), breach of fiduciary duty, violation of Michigan Statutory Law, negligence, and breach of contract.

## PARTIES

2.      Pipefitters Local 636 Insurance Fund ("Plaintiffs") is a trust fund established under and administered pursuant to § 302 of the Labor Management Relations Act, 29 USC §186, and the Employment Retirement Income Act of 1974 ("ERISA"), 29 USC §1001 et. seq., with administrative offices in the city of Troy, Oakland County, Michigan.

3.      Plaintiff GERALD HOOVER is Chairman of the Board of Trustees of Pipefitters Local 636 Insurance Fund. Plaintiff HOOVER is a citizen of the State of Michigan.

4.      Paintiffs JOSEPH BOURGEOIS, CARL EVANS, JOHN R. GREEN, GREG SIEVERT, and FRANK WIECHERT are the remaining members of Board of Trustees of Pipefitters Local 636 Insurance Fund. Plaintiffs JOSEPH BOURGEOIS, CARL EVANS, JOHN R. GREEN, GREG SIEVERT, and FRANK WIECHERT are citizens of the State of Michigan.

5.    Defendant Blue Cross and Blue Shield of Michigan ("BCBSM") is a Michigan non-profit corporation pursuant to Michigan Public Act 350 of 1980, MCL 550.110, et. seq., as amended, with administrative offices in Southfield, Michigan and its principal corporate offices in Detroit, Michigan.

## JURISDICTION & VENUE

6.    Jurisdiction is proper pursuant to 28 USC §1331 and §1367 and 29 USC §1132(e) as Plaintiffs have asserted a federal question and a claim under ERISA.

7.    Venue is proper in this district under 28 U.S.C. § 1391 (a) and (b).

## CLASS ACTION ALLEGATIONS RE: THE OTG

8.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 7 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

9.    This action is brought by Plaintiff as a class action on its own behalf and on behalf of all others similarly situated under the provisions of Fed. R. Civ. P. 23.

10.    The Class represented by Plaintiffs in this action and of which Plaintiffs are a member, consists of all similarly situated self-insured employee welfare funds which contracted with BCBSM pursuant to an Administrative Services Contract to provide administrative services for the funds and which were assessed a cost transfer subsidy known as an "Other than Group" (hereinafter OTG.)

11.    The exact number of members of the class identified above is not known, but it is estimated that there are well over 50 funds holding thousands of members.

The class is so numerous that joinder of individual members in this action is impracticable.

12.      Plaintiff class members each suffered from BCBSM's self-dealing as prohibited under ERISA § 406(b)(1) and its breach of contract and breach of fiduciary duty to the Funds as proscribed under ERISA 29 U.S.C. § 1001, et. seq. from the illegal and/or inappropriate assessment of the cost transfer subsidy known as Other Than Group (OTG).

13.      Plaintiff class members each suffered from BCBSM's self-dealing as prohibited under ERISA § 406(b)(1), breach of contract and breach of fiduciary duty to the Funds as proscribed under ERISA 29 U.S.C. § 1001, et. seq. from BCBSM's failure to stop charging the OTG or alternatively to provide the necessary information and records so that the Funds can verify that BCBSM stopped charging the OTG; they suffered from BCBSM's improper usage of their plan asserts and from BCBSM's failure to disclose its usage of the plan assets.

14.      There are common questions of law and fact involved in this action that affect the rights of each member of the Plaintiff Class and the relief sought is common to the entire class; namely, Plaintiff on behalf of the Plaintiff Class, seeks restitution of all OTG subsidies which were charged to the class member funds in contravention of (1) ERISA; (2) BCBSM's fiduciary duty to the Class members; and (3) Michigan statutory law pertaining to Administrative Services Contracts.

15.      The claims of Plaintiff, who is representative of the Class, are typical of the claims of the Class, in that the claims of all members of the Class, including Plaintiff, depend upon a showing of the acts and omissions of Defendant BCBSM giving rise to

4

the right of the Plaintiff Class to the relief sought that BCBSM in violation of ERISA and in breach of its fiduciary duties under ERISA, and in violation of the ASC, elected to improperly charge an OTG subsidy to the funds. There is no conflict as between any individual named Plaintiff and other members of the Class with respect to this action, or with respect to the claims of relief set forth in the Second Amended Complaint.

16.     The named Plaintiff is the representative party of the Class, and is able to, and will fairly and adequately protect the interest of the Class.

17.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the Class would create a risk of varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant.

18.     Adjudication with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of the other members of the class not parties to the adjudication or substantially impair or impede their ability to protect their interest.

19.     This action is properly maintained as a class action inasmuch as the questions of law and fact common to the members of the class predominate over any question affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

20.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all Funds who suffered losses is impracticable.  Individual losses suffered by each of the Funds are modest in relation to the expense and burden of individual prosecution of the litigation

necessitated by the Defendants' actions. It would be virtually impossible for the Plaintiff class members to efficiently redress their wrongs individually. Individualized litigation would present the potential for inconsistent or contradictory judgments. Individualized litigation would also magnify the delay and expense to all parties and to the court system presented by the complex legal and factual issues of this case. By contrast, the class action procedure presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court as well as economy of scale and expense.

## CLASS ACTION ALLEGATIONS RE: THE CLAIMS RECORDS

21.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 20 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

22.     This action is brought by Plaintiffs as a class action on its own behalf and on behalf of all others similarly situated under the provisions of Fed. Rule Civ. P. 23.

23.     The Class represented by Plaintiffs in this action and of which Plaintiffs are a member, consists of all similarly situated self-insured employee welfare funds which contracted with BCBSM pursuant to an Administrative Services Contract to provide administrative services for the funds and which, in contravention of BCBSM's fiduciary duty under ERISA and in violation of the terms of the ASC,   were improperly denied access to comprehensive claim records, which include but are not limited to the following and as set forth within this Complaint:

           a. Regarding physician claims:  provider tax identification number, provider name, date of service, diagnosis code, place of service,

billed charges, eligible charges, paid amount, and HICFA form 1500.

b. Regarding hospital claims: hospital tax identification number, hospital name, date of service, DRG code, ICD9 number and name, place of service, inpatient/outpatient status, billed charges, eligible charges, and paid amount, UB 92 form; any documents regarding transmittal of cash related to prospective payments to hospital and an accounting of such payments related to Fund participants.

c. Regarding prescription drug claims: provider tax identification number, provider name, NDC code, quantity prescribed, name of drug, charge, dispensing fee, administrative fee, amount paid and co-payment.

d. Regarding fees paid by the Funds related to claim cost: Precise accounting of administrative fees, separating those amounts paid for the OTG subsidy, contingency and provider access fees and any other fee paid unbeknownst to the Fund.

24. The exact number of members of the class identified above is not known but it is estimated that there are well over 50 funds holding thousands of members. The class is so numerous that joinder of individual members of this action is impracticable.

25. Plaintiff class members each suffered from BCBSM's violation of ERISA § 406, breach of contract and breach of fiduciary duty to the Funds as proscribed under

ERISA 29 U.S.C. § 1001, et. seq. from BCBSM's failure to provide claims records as set forth more fully hereinafter.

26.     There are common questions of law and fact involved in this action that affect the rights of each member of the Plaintiff Class and the relief sought is common to the entire class; namely, Plaintiff on behalf of the Plaintiff Class, seeks all claims records as set forth hereinafter in this complaint .

27.     The claims of Plaintiff, who is representative of the Class, are typical of the claims of the Class, in that the claims of all members of the Class, including Plaintiff, depend upon a showing of the acts and omissions of Defendant BCBSM giving rise to the right of the Plaintiff Class to the relief sought that BCBSM in violation of ERISA § 406, breach of its fiduciary duties under ERISA, and in breach of contract refused to provide claims records. There is no conflict as between any individual named Plaintiff and other members of the Class with respect to this action, or with respect to the claims of relief set forth in the Second Amended Complaint.

28.     The named Plaintiff is the representative party of the Class, and is able to, and will fairly and adequately protect the interest of the Class.

29.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the Class would create a risk of varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant.

30.     Adjudication with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of the other members of the class not

parties to the adjudication or substantially impair or impede their ability to protect their interest.

31.     This action is properly maintained as a class action inasmuch as the questions of law and fact common to the members of the class predominate over any question affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all Funds who suffered losses is impracticable.     The burden of individual prosecution of the litigation necessitated by the Defendants' actions would be prohibitive to the Funds.  It would be virtually impossible for the Plaintiff class members to efficiently redress their wrongs individually.   Individualized litigation would present the potential for inconsistent or contradictory judgments.  Individualized litigation would also magnify the delay and expense to all parties and to the court system presented by the complex legal and factual issues of this case.  By contrast, the class action procedure presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court as well as economy of scale and expense.

## GENERAL ALLEGATIONS - FACTUAL BACKGROUND

33.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 32 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

34.     Federal law provides for the establishment of self-insured employee welfare funds for the purpose of providing their beneficiaries with health care, § 302 of the Labor and Management Relations Act, 29 U.S.C. § 186 and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq.

35.     Pursuant to Michigan Public Act 350 of 1980, MCL 550.110, et. seq., as amended, BCBSM is a Michigan Non-Profit Corporation which operates as both an insurance company and as a third-party administrator for self-insured funds.

36.     Prior to January 2004, BCBSM entered into agreements with these Plaintiff self-insured funds to provide third party administrative services.

37.     This type of agreement, known as an Administrative Services Contract (ASC), is drafted by BCBSM.

38.     The ASC is a plan document under ERISA.

39.     A fiduciary has a duty to comply with the terms of the plan documents. ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

40.     Pursuant to the ASC Contract, BCBSM processes claims in line with its established schedules of benefits and otherwise performs administrative and discretionary functions for the Funds.

41.     In return for its services, BCBSM charges an administrative fee.

## GENERAL ALLEGATIONS – BCBSM IS A FIDUCIARY
## UNDER 29 USC § 1002(21)(A)

42.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 41 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

43.     BCBSM is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) as it exercises discretionary authority and/or control in the management of the Funds, as evidenced by, among other things, the following:

a.  BCBSM has discretionary authority and/or control to process and approve or deny claims pursuant to its own established schedules of benefits and its own claims processing manuals and procedures.

b.  BCBSM has discretionary authority and/or control to grant or deny appeals of benefit denials, which are determined by, among other things, reference to its own claims processing manuals and procedures.

c.  BCBSM has discretionary authority and/or control regarding the amount to pay for in-network claims it approves for payment on behalf of the Funds.  In network claims are those incurred by participants with providers approved, in the discretion of by BCBSM, to be BCBSM participating providers.  The amount paid for in network claims are based upon BCBSM established rates for varying procedures, which BCBSM in its discretion adjusts from time to time.

d. BCBSM has discretionary authority and/or control regarding the payment of out of network claims it approves for payment on behalf of the Fund. Out of network claims are those incurred by participants with providers who have not been approved, in the discretion of by BCBSM, to be BCBSM participating providers. Payments for out of network claims are based upon BCBSM's determination of what constitutes a reasonable and customary payment.

e. BCBSM exercises discretionary authority and/or control over the timing of payment of claims.

f. BCBSM exercises discretionary authority and/or control over the issuance of checks for payment of claims directly to providers.

g. After determining in its discretion whether a claim is covered, BCBSM exercises discretionary authority and/or control of the Funds by determining whether any subrogation options exist, whether another insurer may be liable for the same claim, or whether a participant has exceeded yearly or lifetime coverage limits.

h. BCBSM exercises discretionary authority and/or control by negotiating hospital discounts. The amount of such discounts passed on to the Funds fluctuates from month to month.

i.  BCBSM exercises discretionary authority and/or control by designating a specific account representative responsible for the individual Funds' participants.

j.  BCBSM exercises discretionary authority and/or control by unilaterally initiating cost containment initiatives.

k.  BCBSM exercises discretionary authority and/or control by providing comprehensive financial management services to the Funds.

44.     BCBSM is a fiduciary under 29 U.S.C. § 1002(21)(A)(iii) as it has discretionary authority and/or responsibility in the administration of the Funds, as evidenced by, among other things, the following:

a.  BCBSM has discretionary authority and/or responsibility to process and approve or deny claims pursuant to its own established schedules of benefits and its own claims processing manuals and procedures.

b.  BCBSM has discretionary authority and/or responsibility to grant or deny appeals of benefit denials, which are determined by, among other things, reference to its own claims processing manuals and procedures.

c.  BCBSM has discretionary authority and/or responsibility regarding the amount to pay for in-network claims it approves for payment on behalf of the Funds.  In network claims are those incurred by participants with providers approved, in the discretion of by

BCBSM, to be BCBSM participating providers. The amount paid for in network claims are based upon BCBSM established rates for varying procedures, which BCBSM in its discretion adjusts from time to time.

d. BCBSM has discretionary authority and/or responsibility regarding the payment of out of network claims it approves for payment on behalf of the Fund. Out of network claims are those incurred by participants with providers who have not been approved, in the discretion of by BCBSM, to be BCBSM participating providers. Payments for out of network claims are based upon BCBSM's determination of what constitutes a reasonable and customary payment.

e. BCBSM exercises discretionary authority and/or responsibility over the timing of payment of claims.

f. BCBSM exercises discretionary authority and/or responsibility over the issuance of checks for payment of claims directly to providers.

g. After determining in its discretion whether a claim is covered, BCBSM exercises discretionary authority and/or responsibility of the Funds by determining whether any subrogation options exist, whether another insurer may be liable for the same claim, or whether a participant has exceeded yearly or lifetime coverage limits.

h.  BCBSM exercises discretionary authority and/or responsibility by negotiating hospital discounts.  The amount of such discounts passed on to the Funds fluctuates from month to month.

i.  BCBSM exercises discretionary authority and/or responsibility by designating a specific account representative responsible for the individual Funds' participants.

j.  BCBSM exercises discretionary authority and/or control by unilaterally initiating cost containment initiatives.

k.  BCBSM exercises discretionary authority and/or control by providing comprehensive financial management services to the Funds.

45.  BCBSM is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) as it exercises discretionary authority or control respecting management or disposition of the assets of the Funds, as evidenced by, among other things, the following:

a.  BCBSM requires that Funds allocate to BCBSM plan assets to prepay estimated provider and hospital claims, and adjusts such amounts on a quarterly basis.  BCBSM exercises authority and control over these plan assets and uses same to pay claims to providers and to pay the OTG subsidy and contingency and provider access fees to itself out of such plan assets.  The amount of such payments, including the payments for the subsidies and fees paid to itself, fluctuates as determined in the discretion of BCBSM.

b. BCBSM prepares quarterly settlements of administrative and medical costs, which is a general accounting of plan assets for the Funds. This settlement includes a statement of the hospital discount. The OTG subsidy and contingency and provider access fees are built into this discount via a formula established by and known only to BCBSM, and the amount charged for this subsidy and these fees fluctuates quarter to quarter. Thus, the amount of plan assets retained by BCBSM fluctuates in its discretion and are not accounted for separately.

c. BCBSM has discretionary authority regarding the amount to pay out of plan assets for in-network claims it approves for payment on behalf of the Funds. In network claims are those incurred by participants with providers approved, in the discretion of by BCBSM, to be BCBSM participating providers. The amount paid for in network claims are based upon BCBSM established rates for varying procedures, which BCBSM in its discretion adjusts from time to time.

d. BCBSM has discretionary authority regarding the amount to pay out of plan assets for out of network claims it approves for payment on behalf of the Funds. Out of network claims are those incurred by participants with providers who have not been approved, in the discretion of by BCBSM, to be BCBSM participating providers. Payments for out of network claims are based upon BCBSM's

determination of what constitutes a reasonable and customary payment.

    e. Issuing checks with plan assets for payment of claims incurred by Fund participants directly to providers.

## GENERAL ALLEGATIONS RE: THE OTG

46.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 45 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

47.    Upon information and belief the ASCs, in pertinent part, provides:

> "Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State's Insurance Commissioner as authorized pursuant to 1980 P.A. 350 will be reflected in the hospital claims costs contained in Amounts Billed."

48.    The OTG subsidy at issue herein IS A TYPE OF "cost transfer subsidy."

49.    An OTG subsidy is a fee charged by BCBSM to its group insurance clients to support programs for BCBSM's non-group insurance clients.

50.    In its discretion, BCBSM arbitrarily and improperly determined that for a period of time, it was appropriate to also charge such a fee to selective self-insured funds with which it had ASC contracts.

51.    BCBSM sent quarterly statements to these Plaintiff funds that did not disclose the improperly assessed OTG subsidy.

52.    BCBSM arbitrarily assessed an OTG fee to these Plaintiff ASC subscriber self-insured funds that it was entrusted to administer.

53. BCBSM selectively elected to assess this OTG fee to Plaintiff funds although it was not legally required or allowed to do so.

54. BCBSM has alternatively maintained the imposition of the fee is mandated by the terms of the Contract and/or the Insurance Commissioner and/or legal authority.

55. There is no legal authority and/or requirement for BCBSM to assess this fee to its ASC subscribers with self-insured funds.

56. Michigan statutory law specifically precludes such cost transfers between ASC subscribers and other subscribers of the health care corporation, MICH P.A. No 350 § 211 as amended, MCL 550.12111.

57. The ASC contracts prohibit the OTG subsidy which was assessed to these Plaintiff funds.

58. A fiduciary has a duty to comply with the terms of the plan documents. ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

59. The State Insurance Commissioner has not ordered that this fee be included in all BCBSM ASC contracts.

60. Effective January 1, 2004, BCBSM in its discretion indicated it would unilaterally stop charging the OTG subsidy to the Funds.

61. BCBSM refuses to reimburse the funds for the improperly charged OTG.

62. BCBSM was not legally required to assess this OTG fee as evidenced by its selective assessment to only certain ASC subscriber funds and selective waiver to larger funds.

63.     BCBSM has admitted that it waived the OTG subsidy for many of its self-insured funds, yet, it imposed the fee on these Plaintiff funds claiming it was a mandatory fee.

64.     BCBSM has refused to provide an accounting of the amounts that were paid for the OTG subsidy.

65.     BCBSM has refused to provide an accounting of the fees such that Plaintiffs can determine if BCBSM has stopped directly or indirectly assessing the OTG.

66.     As a fiduciary BCBSM must not deal with plan assets in its own interest.

67.     BCBSM has a fiduciary duty to provide the Funds information necessary to ensure proper use and allocation of plan assets entrusted to its care.

68.     As a fiduciary (a) exercising discretionary authority and/or control respecting plan management, (b) exercising discretionary authority and/or responsibility respecting plan administration, and (c) exercising discretionary authority and/or control in the disposition of plan assets, BCBSM had and has a fiduciary duty to provide act in the best interests of the Funds' participants and beneficiaries by not assessing the OTG; by immediately restoring such assets to the Funds with interest; by providing the Funds information necessary to ensure that the OTG is no longer being charged directly or indirectly; that plan assets entrusted to BCBSM are being used prudently in the interests of the Funds and by providing an accounting as to the amounts of the OTG that were improperly assessed.

## GENERAL ALLEGATIONS RE: THE CLAIMS RECORDS

69.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 68 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

70.     The ASC is a plan document under ERISA.

71.     The ASC specifically provides Funds with the right to comprehensive claim information:

> To the extent permitted by State and Federal law, the Fund may have access to plan records and data ... .
>
> The Fund may have access to proprietary information of BCBSM; however, in obtaining such access, the Fund agrees that it will hold all such proprietary information confidential and shall use such information only for purposes related to Enrollees' claims administered by BCBSM pursuant to this Contract and, further agrees, that no such proprietary information shall be released to any third party without such party having first executed an indemnification and confidentiality agreement in a form acceptable to BCBSM. ...
>
> Enrollee specific data will not be released to any third party unless a confidentiality and indemnification agreement in favor of, and acceptable to BCBSM has been executed by such third party, which shall limit the use of such data as permitted by State and Federal law.
>
> Nothing in the Contract, however, will prevent the Fund from utilizing overall claims experience and other claims information of a non-specific Enrollee nature for comparative rate quotations.

72.     A fiduciary has a duty to comply with the terms of the plan documents. ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

73.     Plaintiffs requested claims related information from BCBSM, and agreed to work out an acceptable confidentiality agreement pursuant to the terms of the ASC.

Upon information and belief, other Funds have similarly requested such information from BCBSM.

74.     Plaintiffs sought various claims information for the purpose of performing an overall analysis of Fund costs to ensure that they were meeting their fiduciary obligations to prudently manage and monitor the use of plan assets and to ensure proper use and allocation of plan assets entrusted to BCBSM.

75.     In breach of its contract and in violation of its fiduciary duties to provide such information upon request, to act in the best interests of the participants and beneficiaries, to verify proper allocation and use of plan assets, and to abide by plan documents, i.e. the ASC, BCBSM refused to provide requested claim information, which included the following regarding Fund claims:

>   a.  Regarding physician claims:  provider tax identification number, provider name, date of service, diagnosis code, place of service, billed charges, eligible charges, paid amount, and HICFA form 1500.

>   b.  Regarding hospital claims:  hospital tax identification number, hospital name, date of service, DRG code, ICD9 number and name, place of service, inpatient/outpatient status,  billed charges, eligible charges, and paid amount, UB 92 form; any documents regarding transmittal of cash related to prospective payments to hospital and an accounting of such payments related to Fund participants.

c. Regarding prescription drug claims: provider tax identification number, provider name, NDC code, quantity prescribed, name of drug, charge, dispensing fee, administrative fee, amount paid and co-payment.

d. Regarding fees paid by the Funds related to claim cost: Precise accounting of administrative fees, separating those amounts paid for the OTG subsidy, contingency and provider access fees and any other fee paid unbeknownst to the Fund.

76. Without this information, the Funds cannot verify that the amount of plan assets used by BCBSM to pay claims and/or BCBSM fees and subsidies is prudent, in the best interests of the participants, and in conformance with its obligation not to use plan assets in its own interests.

77. As a fiduciary BCBSM must not deal with plan assets in its own interest.

78. BCBSM has a fiduciary duty to provide the Funds information necessary to ensure proper use and allocation of plan assets entrusted to its care.

## COUNT I - BREACH OF FIDUCIARY DUTIES PURSUANT TO ERISA § 502(a)(2) AS TO THE OTG

79. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 78 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

80. BCBSM is a fiduciary under ERISA, § 3(21), 29 USC, § 1002(21)(A).

81. BCBSM breached its fiduciary duty by improperly imposing the OTG subsidy on these Funds.

WHEREFORE, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and § 409, 29 U.S.C. §1109, the Funds request the following relief:

a.    An accounting of the OTG subsidy paid by the Funds to BCBSM;

b.    An accounting of any other subsidies paid, including contingency and provider access fees and any other fee paid unbeknownst to the Funds;

c.    Restitution to the Funds of the amount paid for the OTG subsidy with interest and any other fee/cost with interest which such accounting reveals was improperly charged;

d.    Declaratory relief stating that the OTG subsidy or any other improperly charged fee cannot be charged to the Funds; and

e.    Damages, costs, applicable interest, and attorneys' fees incurred as a result of the violation of ERISA § 502(a)(2) and § 409.

f.    Restoration of any profits with interest of BCBSM which have been made through the use of the assets of the plan by the fiduciary.

f.    Any other equitable or remedial relief as the court may deem appropriate.

## COUNT II – BREACH OF FIDUCIARY DUTY IN VIOLATION OF ERISA § 502(a)(3) AS TO THE OTG

82.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 81 of the First Amended Complaint and Motion for Class Certification as if fully set forth herein.

83.     BCBSM improperly imposed an OTG subsidy on these Funds in violation of ERISA.

84.     Further, BCBSM is in possession of the claims records generated by the Funds.

85.     BCBSM improperly denies Plaintiffs access to such records.

86.     By denying access to such records, BCBSM fails to disclose to the Plaintiffs what fees have been assessed, including but not limited to the OTG.

87.     By denying access to such records, BCBSM conceals the fees that it charges, thereby breaching its fiduciary duties.

88.     By denying access to such records, BCBSM fails to disclose to the Plaintiffs how such fees were calculated and on what basis so that such fees can be verified.

89.     By denying access to such records, BCBSM breaches its fiduciary duty to the Plaintiffs.

90.     Claims Records include, but are not limited to, the following information:

     a.  Regarding physician claims:  provider tax identification number, provider name, date of service, diagnosis code, place of service, billed charges, eligible charges, and paid amount, and HICFA form 1500; and

     b.  Regarding hospital claims:  hospital tax identification number, hospital name, date of service, DRG code, ICD9 number and name, place of service, inpatient/outpatient status,  billed charges, eligible charges,  and  paid amount,  and  UB 92 form;  and  any

documents regarding .transmittal of cash related to prospective payments to hospital and accounting of such payments are related to Fund participants.

c. Regarding prescription drug claims:  provider tax identification number, provider name, NDC code, quantity prescribed, name of drug, charge, dispensing fee, administrative fee, amount paid and co-payment.

**d. Regarding fees paid by the Funds related to claim cost: Precise accounting of administrative fees, separating those amounts paid for the OTG subsidy, contingency, and provider access.**

91.     The Funds need access to the Claims Records to meet their fiduciary duty to properly monitor costs and to determine the amount of the OTG which was paid and whether the OTG has been abated or merely improperly shifted or masked in another fee.

92.     BCBSM has refused to provide access to these Claims Records.

93.     BCBSM has stated its refusal to provide such information is based, in part, on its desire that it retain its competitive advantage by limiting the ability of the Fund to compare the usage of its plan assets by BCBSM with alternate service providers.

WHEREFORE, pursuant to ERISA § 502(a)(3), the Funds request the following relief:

a.     Order BCBSM to provide access to Claims Records as requested by the Funds; and

b.   An accounting of the OTG subsidy paid by the Funds to BCBSM;

c.   An accounting of any other subsidies paid, including contingency and provider access fees and any other fee paid unbeknownst to the Funds;

d.   Restitution to the Funds of the amount paid for the OTG subsidy with interest and any other fee/cost with interest which such accounting reveals was improperly charged;

e.   Declaratory relief stating that the OTG subsidy or any other improperly charged fee cannot be charged to the Funds; and

f.   Damages, costs, applicable interest and attorneys' fees incurred as a result of the violation of ERISA § 502(a)(3).

g.   Restoration of any profits with interest of BCBSM which have been made through the use of the assets of the plan by the fiduciary.

h.   Any other equitable or remedial relief as the court may deem appropriate.

### COUNT III - BREACH OF FIDUCIARY DUTY PURSUANT TO ERISA § 502(a)(2) AND/OR § 502(a)(3) AS TO THE CLAIMS RECORDS

94.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 93 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

95.   BCBSM is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) as it exercises discretionary authority and/or control in the management of the Funds, as set forth in Paragraphs 43 (a-k) of this Complaint.

96.     BCBSM is a fiduciary under 29 U.S.C. § 1002(21)(A)(iii) as it has discretionary authority and/or responsibility in the administration of the Funds, as set forth in Paragraph 44 (a-k) of this Complaint.

97.     BCBSM is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) as it exercises discretionary authority or control respecting management or disposition of the assets of the Funds, as set forth in Paragraph 45 (a-e) of this complaint.

98.     As a fiduciary (a) exercising discretionary authority and/or control respecting plan management, (b) exercising discretionary authority and/or responsibility respecting plan administration, and (c) exercising discretionary authority and/or control in the disposition of plan assets, BCBSM had and has a fiduciary duty to provide financial and claims information to its principal, i.e. the Funds, upon demand.

99.     As a fiduciary, BCBSM has a duty to act in the best interests of the Funds' participants and beneficiaries by providing the Funds information necessary to ensure plan assets entrusted to BCBSM are being used prudently.

100.    As a fiduciary, BCBSM must not deal with plan assets in its own interest. BCBSM has a fiduciary duty to provide the Funds information necessary to ensure proper use and allocation of plan assets entrusted to its care.

101.    The ASC is a plan document under ERISA.

102.    The ASC specifically provides Funds with the right to comprehensive claim information:

> To the extent permitted by State and Federal law, the Fund may have access to plan records and data ... .
>
> The Fund may have access to proprietary information of BCBSM; however, in obtaining such access, the Fund agrees that it will hold all such proprietary information confidential and shall use such information

only for purposes related to Enrollees' claims administered by BCBSM pursuant to this Contract and, further agrees, that no such proprietary information shall be released to any third party without such party having first executed an indemnification and confidentiality agreement in a form acceptable to BCBSM. ...

Enrollee specific data will not be released to any third party unless a confidentiality and indemnification agreement in favor of, and acceptable to BCBSM has been executed by such third party, which shall limit the use of such data as permitted by State and Federal law.

Nothing in the Contract, however, will prevent the Fund from utilizing overall claims experience and other claims information of a non-specific Enrollee nature for comparative rate quotations.

103. A fiduciary has a duty to comply with the terms of the plan documents. ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

104. Plaintiffs requested claims related information from BCBSM, and agreed to work out an acceptable confidentiality agreement pursuant to the terms of the ASC. Upon information and belief, other Funds have similarly requested such information from BCBSM.

105. Plaintiffs sought various claims information for the purpose of performing an overall analysis of Fund costs to ensure that they were meeting their fiduciary obligations to prudently manage and monitor the use of plan assets and to ensure proper use and allocation of plan assets entrusted to BCBSM.

106. In violation of its fiduciary duties to provide such information upon request, to act in the best interests of the participants and beneficiaries, to verify proper allocation and use of plan assets, and to abide by plan documents, i.e. the ASC, BCBSM refused to provide requested claim information, which included the following regarding Fund claims:

a. Regarding physician claims: provider tax identification number, provider name, date of service, diagnosis code, place of service, billed charges, eligible charges, paid amount, and HICFA form 1500.

b. Regarding hospital claims: hospital tax identification number, hospital name, date of service, DRG code, ICD9 number and name, place of service, inpatient/outpatient status, billed charges, eligible charges, and paid amount, UB 92 form; any documents regarding transmittal of cash related to prospective payments to hospital and an accounting of such payments related to Fund participants.

c. Regarding prescription drug claims: provider tax identification number, provider name, NDC code, quantity prescribed, name of drug, charge, dispensing fee, administrative fee, amount paid and co-payment.

d. Regarding fees paid by the Funds related to claim cost: Precise accounting of administrative fees, separating those amounts paid for the OTG subsidy, contingency and provider access fees and any other fee paid unbeknownst to the Fund.

107. Without this information, the Funds cannot verify that the amount of plan assets used by BCBSM to pay claims and/or BCBSM fees and subsidies is prudent, in the best interests of the participants, and in conformance with its obligation not to use plan assets in its own interests.

WHEREFORE, the Plaintiffs request the following relief:

a.      Order BCBSM to provide access to Claims Records as requested by the Funds; and

b.      An accounting of the OTG subsidy paid by the Funds to BCBSM;

c.      An accounting of any other subsidies paid, including contingency and provider access fees and any other fee paid unbeknownst to the Funds;

d.      Restitution to the Funds of the amount paid for the OTG subsidy with interest and any other fee/cost with interest which such accounting reveals was improperly charged;

e.      Declaratory relief stating that the OTG subsidy or any other improperly charged fee cannot be charged to the Funds; and

f.      Damages, costs, applicable interest, and attorneys' fees incurred as a result of the violation of of BCBSM's refusal timely to provide such information and its violation of ERISA § 502(a)(2) and/or (3).

g.      Restoration of any profits with interest of BCBSM which have been made through the use of the assets of the plan by the fiduciary.

h.      Any other equitable or remedial relief as the court may deem appropriate.

## COUNT IV – VIOLATION OF ERISA § 406, 29 U.S.C. § 1106(b)(1)

108.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 107 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

109.     BCBSM is a fiduciary.

110.     That, in the alternative, BCBSM is a party in interest as a provider of services to an ERISA plan.

111.     BCBSM improperly imposed an OTG subsidy on these funds in violation of ERISA.

112.     That by improperly imposing an OTG subsidy on these Funds, BCBSM breached its fiduciary duty, and, in so doing, violated ERISA § 406(b)(1).

113.     By improperly imposing an OTG subsidy on these Funds, BCBSM as a party in interest providing services, violated ERISA § 406(b)(1).

114.     Plaintiffs have requested access to various claims records and have been denied same and BCBSM has stated its refusal to provide such information is based, in part, on its desire that it retain its competitive advantage by limiting the ability of the Funds to compare the usage of its plan assets by BCBSM.

115.     That BCBSM has violated ERISA § 406(b)(1) by improperly imposing an OTG  subsidy to these Funds in order to benefit other customers.

116.     That BCBSM has violated ERISA § 406(b)(1) by refusing to provide the claims records so as to avoid disclosure of the improper allocations and to protect its own self-interest to the detriment of the interest of the Funds.

WHEREFORE, pursuant to ERISA § 406, § 502(a)(2) and § 503(a)(3), the Funds request the following relief:

a.    Order BCBSM to provide access to Claims Records as requested by the Funds;

b.    An accounting of the OTG subsidy paid by the Funds to BCBSM;

d.    An accounting of any other subsidies paid, including contingency and provider access fees and any other fee paid unbeknownst to the Funds;

e.    Restitution to the Funds of the amount for the OTG subsidy, with interest, and any other fee/cost which such accounting reveals was improperly charged;

f.    Declaratory relief stating that the OTG subsidy or any other improperly charged fee cannot be charged to the Funds; and

g.    Damages, costs, applicable interest and attorneys' fees incurred as a result of the breach of fiduciary duty and violation of ERISA § 406(b)(1).

h.    Any other equitable or remedial relief as the court may deem appropriate.

## COUNT V - BREACH OF CONTRACT AS TO THE OTG AND THE CLAIMS RECORDS

117.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 116 of the Second Amended Complaint and Motion for Class Certification as if fully set forth herein.

118.    BCBSM has breached the ASC contract by imposing the OTG subsidy, failing to properly account for the OTG subsidy, and refusing to return to the Funds the amounts paid for the OTG subsidy.

119.    The ASC specifically provides Funds with the right to comprehensive claim information:

> To the extent permitted by State and Federal law, the Fund may have access to plan records and data ... .

> The Fund may have access to proprietary information of BCBSM; however, in obtaining such access, the Fund agrees that it will hold all such proprietary information confidential and shall use such information only for purposes related to Enrollees' claims administered by BCBSM pursuant to this Contract and, further agrees, that no such proprietary information shall be released to any third party without such party having first executed an indemnification and confidentiality agreement in a form acceptable to BCBSM. ...

> Enrollee specific data will not be released to any third party unless a confidentiality and indemnification agreement in favor of, and acceptable to BCBSM has been executed by such third party, which shall limit the use of such data as permitted by State and Federal law.

> Nothing in the Contract, however, will prevent the Fund from utilizing overall claims experience and other claims information of a non-specific Enrollee nature for comparative rate quotations.

120.    BCBSM has breached the terms of the ASC contract by failing to provide the Fund access to requested claims information.

WHEREFORE, the Fund requests the following relief:

a.    An accounting of the OTG subsidy paid by the Funds to BCBSM;

b.    An accounting of any other subsidies paid, including contingency and provider access fees and any other fee paid unbeknownst to the Funds;

c.    Damages for breach of contract in an amount to be determined at trial, including but not limited to, the amount paid for the OTG subsidy with interest and any other fee/cost with interest which such accounting reveals was improperly charged;

c.    Declaratory relief stating that the OTG subsidy or any other improperly charged fee cannot be charged to the Funds; and

d.    Damages, costs and attorneys' fees incurred as a result of the breach of contract.

## COUNT VI  NEGLIGENCE

121.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 120 of the Second Amended Complaint and Motion for Class Certification as if fully stated forth herein.

122.    Defendant BCBSM owed Plaintiffs a duty to exercise due care and skill in providing administrative contract services to the Funds.

123.    Defendant BCBSM breached its duty in negligently providing services and in improperly determining that an OTG/cost transfer subsidy was allegedly required.

124.    By negligently, willfully, recklessly, wantonly and repeatedly committing gross errors and failing to exercise due care and skill, in providing administrative services to the Funds and in failing to promptly discover and disclose those errors to the Funds, Defendant BCBSM, acted negligently, willfully, recklessly and wantonly.

125.    As a direct and proximate cause of Defendant BCBSM's negligence and willful, wanton and reckless misconduct, Plaintiffs have suffered significant damages, the total obligation for which the Funds have been damaged is significant. By reason of

the foregoing, the Funds have suffered damages in the millions of dollars, the exact amount to be determined at trial.

WHEREFORE, Plaintiffs request judgment against BCBSM for negligence, willful, reckless and wanton negligence including  a) damages in an amount to be determined at trial;  b) applicable interest, costs and expenses of this action including reasonable attorneys' fees and such other and further relief as the court deems just and proper.

## COUNT VII- FRAUDULENT AND/OR NEGLIGENT CONCEALMENT AND/OR MISREPRESENTATION

126.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 125 of the Second Amended Complaint and Motion for Class Certification as though fully stated herein.

127.    Defendant   BCBSM   made   several   fraudulent   and/or   negligent misrepresentations of material fact to Plaintiffs regarding the OTG, including, but not limited to representations regarding the legality of same and failed to disclose the charge on quarterly statements and to provide records with full disclosure of such charges.

128.    Defendant BCBSM owed Plaintiffs a duty of full and honest disclosure in connection with its performance of administrative services.

129.    Plaintiffs reasonably, but detrimentally, relied on Defendant BCBSM's fraudulent and/or negligent concealment of its breach of its fiduciary duty to the Funds.

130.    But for Defendant BCBSM's fraudulent concealment, the Funds would not have allowed the OTG monies to be paid.

131.    But for Defendant BCBSM's fraudulent and/or negligent concealment, and misrepresentation, Plaintiffs would have discovered the improper OTG assessments.

132.     As a result of Defendant BCBSM's fraudulent and/or negligent concealment and misrepresentation, Plaintiffs have suffered significant damages. By reason of the foregoing, the Funds have suffered significant damages, the exact amount to be determined at trial.

WHEREFORE, Plaintiffs request judgment against Defendant, including:

a.     Damages in an amount to be determined at trial;

b.     Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

c..     Ordering BCBSM to provide access to Claims Records as requested by the Funds;

b.     An accounting of the OTG subsidy paid by the Funds to BCBSM;

d.     An accounting of any other subsidies paid, including contingency and provider access fees and any other fee paid unbeknownst to the Funds;

e.     Restitution to the Funds of the amount for the OTG subsidy, with interest, and any other fee/cost which such accounting reveals was improperly charged;

f.     Declaratory relief stating that the OTG subsidy or any other improperly charged fee cannot be charged to the Funds; and

g.     Damages, costs, applicable interest and attorneys' fees;

h.     Any other equitable or remedial relief as the court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

NOW COME the above-captioned Plaintiffs, for themselves and all other members of the class, by and through their attorneys, SULLIVAN, WARD, ASHER & PATTON, P.C., and demand a trial by jury of the issues framed in these proceedings.

## CERTIFICATE OF SERVICE

I hereby certify that on **July 23, 2007,** I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Sharon S. Almonrode
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48037-0222
Phone: 248-746-0700
Primary E-mail:
salmonrode@swappc.com
P33938

W0513038