UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIPEFITTERS LOCAL 636
INSURANCE FUND, et al.,

             Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD
OF MICHIGAN,

             Defendant.
_____/

CIVIL ACTION NO. 04-73400

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

I recommend that Plaintiffs' Motion for Class Certification be denied.

**II.**    **REPORT**:

    **A.**    **Procedural History**

Plaintiffs filed their Second Amended Complaint and Motion for Class Certification on July 23, 2007. Defendant filed its Answer and Affirmative Defenses on August 13, 2007. Plaintiffs filed their Response to the Affirmative Defenses on August 18, 2007.

The Plaintiffs filed a Motion to Certify Class Action and to Appoint Class Counsel on July 24, 2008. The Motion was referred to the magistrate judge by Order of Reference on August 7, 2008. Defendant filed its Response to the Motion on August 25, 2008, and Plaintiffs filed a Reply on September 10, 2008. The Motion was brought on for hearing on September 24, 2008, and taken under advisement.

   **B.**   **Statement of Facts**

Plaintiffs are Pipefitters Local 636 Insurance Fund (hereinafter "Fund") and its Board of Trustees.  The Plaintiff Fund is a trust fund established under and administered pursuant to Section 302 of the Labor Management Relations Act, 29 U.S.C. §186, and the Employee Retirement Income Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq.  The administrative offices of the Fund are located in the City of Troy, Michigan.  The trustee Plaintiffs are all citizens of Michigan.  Defendant Blue Cross and Blue Shield of Michigan ("BCBSM") is a Michigan non-profit corporation pursuant to Michigan Public Act 350 of 1980, MCL 550.110 et seq., as amended, with administrative offices in Southfield, Michigan, and its principal corporate offices in Detroit, Michigan.

The Fund is a self-insured health plan/group established and administered under ERISA for the purpose of providing health and welfare benefits to participants, retirees and beneficiaries.  Such plans may purchase insurance to provide medical and health care benefits.  Alternatively, they may self-insure the cost of providing benefits and contract with a third party, such as BCBSM, for claims administration and decisions on matters of coverage.  Defendant BCBSM operates both as an insurance company and as a third party administrator for self-insured plans/groups pursuant to Michigan Public Act 350 of 1980, MCL §550.110 et seq.  BCBSM undertook to provide services as a third party administrator for the Plaintiffs under an agreement referred to as an administrative service contract ("ASC").  Pursuant to the ASC, BCBSM processed claims and performed administrative and discretionary functions for the Fund, in exchange for an administrative fee.

2

In the course of its business dealings with Plaintiffs, BCBSM assessed a cost transfer subsidy known as an "other than group" subsidy (hereinafter "OTG"). Plaintiffs maintain that the imposition of the OTG subsidy was prohibited by Michigan law, MCL §550.12111, and the terms of the ASC. Effective January 1, 2004, BCBSM stopped charging the OTG subsidy to the Plaintiffs. The Second Amended Complaint alleges that Defendant has refused to reimburse the Fund for OTG charges assessed prior to that date; refused to provide an accounting of the amounts paid; refused to provide an accounting of the fees such that Plaintiffs can determine if BCBSM has continued to assess the OTG indirectly; and refused to allow Plaintiffs access to claims records as provided in the ASC. Plaintiffs maintain that BCBSM's conduct constitutes a breach of fiduciary duty under ERISA. They also assert claims for relief under theories of breach of contract, negligence and fraud. The Second Amended Complaint seeks an accounting of the OTG and other fees paid to Defendant, restitution of the amounts charged improperly, declaratory relief, damages, restoration of profits obtained by BCBSM through the use of plan assets, access to claims records and attorney fees and costs.

In addition to pursing relief in their own right, Plaintiffs allege in the instant Motion that they are members of a putative class that consists of all similarly situated self-insured employee health and welfare plans/"groups" which contracted with BCBSM pursuant to an ASC to provide administrative services, and which were improperly assessed the cost transfer/OTG subsidy. Plaintiffs further allege that they are members of a putative class that consists of all similarly situated self-insured employee health and welfare plans/"groups" which contracted with BCBSM pursuant to an ASC to provide administrative services for the plans/"groups" and which were improperly denied access to comprehensive

claims records. Plaintiffs assert in their Motion that their claims satisfy all of the prerequisites listed in Fed.R.Civ.P. 23(a). They maintain that this action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(A) and (B) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications to individual class members, which would establish incompatible standards of conduct for the Defendant, and because adjudications with respect to individual members of the class(es) would as a practical matter be dispositive of the interests of other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

Plaintiffs further allege that certification is proper under Fed.R.Civ.P. 23(b)(2) because the Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class(es) as a whole. Alternatively, Plaintiffs argue that this action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3) because common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods of adjudication. Finally, Plaintiffs pray that their counsel be appointed to serve as class counsel.

**C.**   **Analysis**

Fed.R.Civ.P. 23 governs class actions. The rule provides, in pertinent part, as follows:

**Rule 23.  Class Actions**

**(a)    Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

**(b)    Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

**(c)      Certification Order;  Notice to  Class members; Judgment; Issues Classes; Subclasses**.

> **(1)      Certification Order.**

> > (A) *Time to Issue.*   At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

> > (B) *Defining the Class; Appointing Class Counsel.*   An order that certifies a class action must define the class and the class claims, issues, or defenses, and must

6

> appoint class counsel under Rule 23(g).
>
> (C) *Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment.

Certification of a class action is appropriate where Plaintiffs satisfy the four prerequisites listed in Fed.R.Civ.P. 23(a) and any one of the three alternative qualifications listed in Rule 23(b). The party invoking the rule has the burden of showing that all prerequisites have been satisfied. District courts have broad discretion in certifying class actions within the framework of the Rule. Cross v. National Trust Life Ins. Co., 553 F.2d 1026, 1029 (6th Cir. 1977). In determining whether to certify a class, the court need only insure that the requirements of Rule 23 are met. Thompson v. County of Medina, 29 F.3d 238, 240 (6th Cir. 1994). Likelihood of success on the merits is not a requirement for certification. Id. For purposes of a class certification motion, the allegations of the complaint must be accepted as true. Eisen v. Carlisle and Jacquelin, 417 U.S. 156 (1974); Blackie v. Barrack, 524 F.2nd 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). This court should conduct a "rigorous analysis" to confirm that the requirements of the Rule have been met. General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982). The court should not certify a class if the procedures under the Rule will abridge or hinder the ability of any party to defend their substantive rights or to assert individual defenses. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612-13 (1997); Broussard v. Meineke

Discount Muffler Shops, Inc., 155 F.3d 331, 344-45 (4th Cir. 1998); Cimino v. Raymark Indus., Inc., 151 F.3d 297, 311-21 (5th Cir. 1998).

        **1.**    **Rule 23(a) Prerequisites**

A plaintiff seeking class certification must satisfy the requirements of numerosity, commonality, typicality and adequacy of representation, as set forth in Fed.R.Civ.P. 23(a). Golden v. City of Columbus, 404 F.3d 950, 965 (6th Cir. 2005); Coleman v. GMAC, 296 F.3d 443 (6th Cir. 2002).

        **a.**    **Numerosity**

The Second Amended Complaint contains two separate types of class action allegations. In rhetorical paragraph 8, Plaintiffs represent that they are members of a class consisting "of all similarly situated self-insured employee welfare funds which contracted with BCBSM pursuant to an administrative service contract to provide administrative services for the funds and which were assessed a cost transfer subsidy known as and "other than group . . .." In rhetorical paragraph 23, Plaintiffs assert that they represent, and are members of, a class consisting "of all similarly situated self-insured employee welfare funds which contracted with BCBSM pursuant to an administrative service contract to provide administrative services for the funds and which, . . . were improperly denied access to comprehensive claim records . . .." It is unclear from the Second Amended Complaint whether Plaintiffs intended to describe a single class with two common characteristics, or two separate classes. In oral argument, however, counsel for Plaintiffs asserted that the Complaint describes two classes: (a) self-insured funds which were charged the OTG; and (b) self-insured funds which were denied access to claims records.

8

Plaintiffs' Motion for Class Certification relies upon information provided by BCBSM in response to discovery. Based on that information, Plaintiffs estimate the number of BCBSM clients who entered into administrative service contracts since 2001 to be between 550 and 875. Of those, the "great majority" have contracts containing language which included the OTG/cost transfer subsidy provision. In addition, the "great majority" of such clients were charged the OTG. (Plaintiffs Exhibit 1, Interrogatories 11-13, inclusive). Plaintiffs further rely upon the deposition testimony of Cynthia Garofali, Defendant's Manager of Special Markets Underwriting, that "it was the policy of the corporation to charge the OTG to all of BCBSM's group customers, which included its administrative service clients, and 'the great majority' of those ASC groups were charged the OTG. Ms. Garofali further testified that the methodology applied to calculate the OTG assessed to ASC clients was uniform. (Plaintiffs' Exhibit 3, Garofali Deposition at pp. 73-74, 81, 92-93, 101-03, 123, 140).

Plaintiffs observe that Rule 23(a)(1) requires a class to be so numerous that joinder of all the members is impracticable. They emphasize, however, that there is no strict numerical test for determining such impracticability. Rather, the numerosity requirement requires an examination of the facts of each case and imposes no limitations. Senter v. General Motors Corp., 532 F.2d 511, 523 (6th Cir.), cert. denied, 429 U.S. 870 (1976) ("there is no specific number below which class action relief is automatically precluded."). Plaintiffs emphasize that the Rule does not require that the class be so numerous as to render joinder impossible. Rather, a Plaintiff seeking class certification must establish only that joinder would be difficult or inconvenient. Rodriguez v. Berrybrook Farms, Inc., 672 F.Supp. 1009, 1013 (W.D. Mich. 1987). "The question of what constitutes impracticability

9

. . . depends on the particular facts of each case and no arbitrary rules regarding the size of classes have been established by the courts."  Wright, Miller and Kane, Federal Practice and Procedure: Civil 3rd §1762 (citing Senter v. General Motors Corp., 532 F.2d 511, 523 n.24 (6th Cir.), cert. denied, 429 U.S. 870 (1976)).  Nonetheless, the same commentators note that the "general objective of subdivision (a)(1) . . . is 'to prevent members of a small class from being unnecessarily deprived of their rights without a day in court' by the opposing party or by only a few members of the class resorting to Rule 23."  Id.

Plaintiffs argue that the number of class members in this case satisfies the numerosity requirement and exceeds the size of classes previously certified.  They cite Van Vels v. Premiere Athletic Center of Plainfield, Inc., 182 F.R.D. 500 (W.D. Mich. 1998) as a case in which the court certified a class containing only 16 members.  They note that the number of class members in the instant case far exceeds that number.

The Defendant argues that Plaintiffs have failed to demonstrate the prerequisite of numerosity.  Initially, BCBSM argues that the Second Amended Complaint fails to provide a sufficient definition of the proposed class it seeks to certify.  Defendant observes that the Plaintiffs' papers failed to delineate whether there is one proposed class with two characteristics (i.e. paid the OTG subsidy and denied claims records) or to separate proposed classes (i.e. paid the OTG subsidy or denied claims records).  While I agree with Defendant that the Second Amended Complaint is unclear, counsel for Plaintiffs declared in oral argument that two separate classes are proposed for certification.  I will, therefore, address Defendant's arguments separately as to each.

10

### (i) <u>Plaintiffs Challenging OTG</u>

The Second Amended Complaint and Motion for Class Certification contains a section entitled "CLASS ACTION ALLEGATIONS RE: THE OTG" (rhetorical paragraphs 8-20, inclusive).   Rhetorical paragraph 10 provides that "[t]he Class represented by Plaintiffs in this action . . . consists of all similarly situated self-insured employee welfare <u>funds</u> which contracted with BCBSM pursuant to an Administrative Service Contract . . . and which were assessed a cost transfer subsidy known as 'Other than Group' (hereinafter OTG)." (Emphasis added).  Defendant's Brief in Opposition to Class Certification declares that "[t]he class defined in the Second Amended Complaint is limited to <u>funds</u> like the Trust Fund, but the class defined in the motion is broader and includes all ASC customers of BCBSM that ever paid the OTG subsidy."  (Defendant's Brief, Page 6, emphasis added). That proposition is an extension of the argument made by Defendant to the district judge on June 28, 2007 (see Defendant's Exhibit B, Pages 32-35).  Counsel for BCBSM correctly observed that the Second Amended Complaint describes the Pipefitters Local 636 Insurance Fund as a "<u>Trust Fund</u>" established and administered under ERISA.  (Rhetorical Paragraph 2), and defines the class represented by Plaintiffs as consisting of "all similarly situated self-insured employee welfare <u>funds</u> which contracted with BCBSM pursuant to an Administrative Services Contract . . . and which were assessed a cost transfer subsidy known as an 'Other than Group . . ..'" (Rhetorical Paragraph 10, emphasis added).  The thrust of Defendant's argument is that the language of the Complaint must be construed precisely, and that Defendant's ASC clients other than <u>funds</u> cannot reasonably be characterized as class members.  Counsel for Plaintiffs immediately challenged that argument, contending (inaccurately) that "it's <u>plans</u> that entered into an Administrative

11

Service Contract that were improperly charged the OTG, is I believe how we couched that for purposes of the class." Defendant's counsel continued to insist that "ERISA has specific terms, and ERISA defines an employee welfare benefit <u>plan</u> and it defines a <u>fund</u>." (Defendant's Exhibit B, Pages 33-34, emphasis added). Plaintiffs' counsel reemphasized their position that Michigan law prohibits the assessment of an OTG to any ASC client. The court did not decide the issue, but permitted the parties to pursue discovery.

29 U.S.C. §1002 defines the term "employee welfare benefit plan" as " . . . any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . . ." Thus, it is plain that a welfare benefit <u>plan</u> includes any <u>fund</u> established or maintained for the purpose of providing participants which medical benefits. The statute does not define "fund" independently.

The logic of Defendant's argument appears to be that, while the general term "employee welfare benefit <u>plan</u>" includes any <u>fund</u> established or maintained for the designated purpose, the narrower term <u>fund</u> does not include a <u>plan</u>. I readily agree with Defendant that Plaintiffs' counsel could, and should, apply the language of the statute with greater precision. Nonetheless, the statements of Plaintiffs' counsel before the district judge clearly declared their position that Michigan law prohibits the charging of OTG subsidy to any Administrative Services Contract clients, and that it was Plaintiffs' intent to include within the prospective class any such client so charged. Defendant's discovery responses establish that the number of BCBSM clients with Administrative Services

12

Contracts since 2001 ranged approximately between 550 and 875.  (Plaintiffs' Exhibit 1).
The same discovery indicates that the "great majority" of the ASC's included a provision
relating to OTG, and that the "great majority" of the groups with Administrative Services
Contracts were charged the OTG cost transfer.  (Id.).  Defense counsel's argument to the
district judge reflected that BCBSM's <u>fund</u> clients with ASC's numbered only 18.  I am
satisfied, however, from my review of the record that the proposed class intended by
Plaintiffs is not restricted to <u>funds</u>, despite the imprecision of the language in the Second
Amended Complaint.

If a court decides that a class described in a complaint is insufficiently definite, it has
discretion to redefine it appropriately to bring the action within Rule 23.  Wright, Miller &
Kane, <u>Federal Practice and Procedure: Civil 3</u><sup>rd</sup> §1760.  In my view, Plaintiffs' intent to
include all BCBSM clients who were charged an OTG subsidy pursuant to an ASC is
adequately established.  The court could adjust the definition in the certification order.
While it might not be entirely unreasonable to recommend denial of class certification based
upon Plaintiffs' choice of words, I recommend that the Court indulge the broader
interpretation, such that the size of the OTG class is the "great majority" of 550 to 875
clients, rather than the 18 suggested by Defendant in the earlier argument.  Courts have
found that, where potential class members number in the hundreds or thousands, the
requirement of numerosity is met.  See, <u>MSU Faculty Ass'n. v. Michigan State Univ.</u>, 93
F.R.D. 54, 56 n.1 (W.D. MI 1981).

Defendant asserts the additional argument that the numerosity requirement is not
met when proposed class members have the financial ability and incentive to bring actions
in their own right.  BCBSM relies upon <u>O'Neil v. Appel</u>, 165 F.R.D. 479 (W.D. MI 1996);

Ansari v. New York University, 179 F.R.D. 112 (S.D. N.Y. 1998).  In O'Neil, the court found that, while there were 57 potential class members, they all had sufficient resources to bring their own lawsuit if they so desired.  That fact was held to distinguish the case from typical class actions in which the interests of individual plaintiffs were too small to warrant separate actions, or in which the individual class members typically lacked resources necessary for independent litigation.

> Determination of practicability of joinder depends on 'all the circumstances surrounding a case, not on mere numbers.' Robidoux v. Celani, 987 F.2d at 936.  Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and the like.  Id.

O'Neil, 165 F.R.D. at 490.

In the case at bar, BCBSM argues that each proposed class member has paid equivalent or higher OTG subsidy amounts than the Plaintiff Fund, and that each has the financial ability to seek relief from BCBSM on an individual basis.  Defendant further argues that, if the proposed class was certified, "other ASC funds with much larger claims for damages would be bound by the result in this case."  (Defendant's Brief, Page 11, n.1). It is undisputed that all of the potential class members are located in the State of Michigan. In O'Neil, the court declined to certify the class whose members were located in eleven different states, finding that such a circumstance, "in itself does not appear to provide an obstacle to joinder, either in the present case or in a finite number of individual actions in which warrant purchasers are grouped together as plaintiffs."

> "This case does not present the situation in which the small magnitude of each claim relative to the high cost of individual

> litigation makes a class action the only effective mechanism for
> seeking redress."

O'Neil, 165 F.R.D. at 491 (quoting McMerty v. Burtness, 72 F.R.D. 450, 453 (D. Minn.

1976)).

The number of potential class members in O'Neil (56) was far smaller than the

proposed class in the instant case.  While the number of Defendant's ASC clients is finite,

and they are all located in Michigan, thus enhancing the practicability of joinder.  The shear

number of potential plaintiff class members is such that individual actions would be a

substantial burden on the courts.  Viewing all of the circumstances of the instant case, I am

persuaded that Plaintiffs have carried the burden of establishing the prerequisite

numerosity of their proposed OTG Class.

### (ii) **Plaintiffs Denied Claims Records**

The language of the Second Amended Complaint defining the second Plaintiff class

(ASC clients denied access to records) exhibits the same imprecision as that defining the

class opposing the OTG.  As to this second class, however, I conclude that Plaintiffs have

not established the prerequisite of numerosity.  Defendants argue that, "[e]ven after . . .

discovery, the Trust Fund has still failed to produce even a shred of evidence that

demonstrates the existence of the number of customers in the proposed class that were

allegedly denied access to claims records."  (Defendant's Brief, Page 7).  I agree.  The

Brief in Support of Plaintiffs' Motion cites discovery responses which establish a substantial

number of other BCBSM clients who entered into ASCs and were charged the OTG cost

transfer.  No similar evidence is offered to establish the number of other ASC clients which

contracted with BCBSM and were improperly denied access to comprehensive claims

records.  In fact, there is no evidence that <u>any</u> ASC client other than the currently named Plaintiffs were denied such access by Defendant.  The very existence of additional entities sharing the same essential class characteristic is entirely speculative under the current state of the record.

"Of course, if there are no members of the class other than the named representatives, then Rule 23(a)(1) obviously has not been satisfied."  Wright, Miller & Kane, <u>Federal Practice and Procedure: Civil 3rd</u> §1762, n.3.  The commentators further observe that when other class members are shown to exist, but can be easily joined, a class action should not be allowed.  "This is in keeping with the general objective of subdivision (a)(1), which is 'to prevent members of a small class from being unnecessarily deprived of their rights without a day in court' by the opposing party or by only a few members of the class resorting to Rule 23."  <u>Id</u>., n.5.  Plaintiffs' Motion for Class Certification simply asserts, without evidentiary support, that joinder of all members in this proposed class is impractical.  Despite the opportunity to conduct discovery, they have identified no potential class members, other than themselves, who requested comprehensive claim records and were denied access to them.  I conclude, therefore, that the prerequisite of numerosity has not been established with respect to the proposed class of plaintiffs who were denied claims records.

### b.   <u>Commonality</u>

The second prerequisite established under Fed.R.Civ.P. 23(a) is that there be "questions of law or fact common to the class."  Fed.R.Civ.P. 23(a)(2).  The Rule does not require that all questions of law or fact raised in the litigation be common to every class member.  <u>Port Auth. Police Benevolent Assn. v. Port Auth.</u>, 698 F.2d 150 (2nd Cir. 1983).

See also, Wright, Miller & Kane, <u>Civil Practice and Procedure</u>: Civil 3rd §1763.  While the commentators note that "the use of the plural 'questions' suggests that more than one issue of fact must be common to members of the class," Plaintiff cites case law for the proposition that one common question of fact or law is sufficient.  <u>Bittinger v. Tecumseh Products Co.</u>, 123 F.3d 877, 884 (6th Cir. 1997); <u>Rodriguez v. Berry Brook Farms, Inc.</u>, 672 F.Supp. 1009, 1015 (W.D. Mich. 1987).  <u>Rodriguez</u> stands for the proposition that, where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.  <u>Id</u>.

### (i) <u>Plaintiffs Challenging OTG</u>

Plaintiffs argue that the common nucleus of the instant case is a challenge to the imposition of the cost transfer subsidy (OTG) and BCBSM's alleged failure to comply with a statutory prohibition against the assessment of the fee to the proposed class.  I agree with Plaintiffs that all members of the proposed OTG class share the common facts that their Administrative Service Contracts (ASC) included a transfer subsidy provision, and that each were charged the OTG/cost transfer subsidy.  A question of law common to each member of the proposed class is whether the uniform assessment contravened Michigan's statutory law.  I am satisfied that this question is sufficient to meet the commonality prerequisite of the Rule.

Defendant maintains that commonality is absent because the ERISA and breach of contract claims will require independent determinations for each of the proposed class members based upon individual facts and circumstances.  BCBSM argues that the relationship of each proposed class member with Defendant is governed by a separate

ASC negotiated by each member, and argues further that the resolution of this case would require an individualized showing that Defendant breached each contract and/or its fiduciary duty to each member. I find the Defendant's arguments unpersuasive. BCBSM's answers to Plaintiffs' Interrogatories establish that each of the ASCs contained a provision for the assessment of the OTG. The answers further establish that the great majority of ASC clients were assessed the subsidy. Cynthia Garofali testified that BCBSM company policy dictated that the great majority of self-insured ASC clients were charged the OTG subsidy, and that the OTG was assessed consistently against both insured and ASC clients. (Plaintiffs' Exhibit 3). While it may be true that the language of individual contract provisions may have differed, the result (authorization and assessment of the OTG) were common to all class members. Similarly, as all proposed members of the class entered into their contracts in Michigan, it is reasonable to conclude that they will be governed by the same statutory provisions.

Defendant relies upon Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir. 1998). In that case, a putative class of salaried retirees brought suit under ERISA in an effort to require their former employer to furnish them with basic health care coverage at no cost for their lifetimes. The district court permitted the plaintiffs to proceed as a class. The Court of Appeals reversed, noting that not every common question will suffice to meet commonality requirements. What is required is a common issue the resolution of which will advance the litigation. Because the Plaintiffs were proceeding on theories of bilateral contract and estoppel, the court determined that the claims would depend upon which documents each retiree might have signed, and any representations that the employer might have made to each. Given the lack of uniformity, the prerequisite of commonality

18

was found to be absent. In the case at bar, all class members rely upon written contract provisions calling for the imposition of the OTG. Plaintiffs allege that the contract provisions are the same as to that particular for each prospective class member, and there is no evidence to the contrary. Even if the language of the several contracts varied, it is a common, undisputed fact that each imposed the OTG. The central legal claim in the case is that <u>any</u> contract language authorizing the OTG is contrary to a specific and generally applicable statutory prohibition. I conclude that the prerequisite of commonality has been demonstrated as to the proposed OTG class.

### (ii) **Plaintiffs Denied Claims Records**

I reach the opposite conclusion as to the proposed class of Plaintiffs who were allegedly denied access to claims records. As discussed above in Section 1(a) of this Report, Plaintiffs have failed to demonstrate that any other ASC client has been denied access to records by Defendant. Thus no class sharing that characteristic has been shown to exist, and commonality not established.

### c. **Typicality**

The third prerequisite of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Wright, Miller & Kane observe that "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory. Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 3rd §1764. The representative's claim need not always involve the same facts or law, provided there is a

common element of fact or law.  <u>Senter v. General Motors Corp.</u>, 532 F.2d 511 (6th Cir.), <u>cert. denied</u>, 429 U.S. 870 (1976).  "In general, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members."  Wright, Miller & Kane, <u>supra</u> §1764; <u>Olden v. LaFarge Corp.</u>, 203 F.R.D. 254 (E.D. Mich. 2001), aff'd, 383 F.3d 495 (6th Cir. 2004).

### (i) **Plaintiffs Challenging OTG**

In contesting Plaintiffs' claim of typicality, Defendant again relies upon <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388 (6th Cir. 1998).  Defendant contends that "the relationship between BCBSM and each proposed class member is governed by a separate administrative services contract that was negotiated by representatives of each class member and representatives of BCBSM.  They further assert that the claims of the Plaintiff Trust Fund are atypical because, unlike other ASC customers, it employed a consultant who was fully knowledgeable of the OTG subsidy before the contract was executed.  BCBSM maintains that "individual determinations" as to each class member will be necessary to determine the specific contractual and/or fiduciary duty owed by Defendant, and to determine whether those duties were breached in each instance.  "In other words, even if the trust fund proves its claims, it is not automatic that those claims will be proven as to the other proposed class members."  (Defendant's Brief, Pages 13-14).  Defendant further argues that it would be necessary to demonstrate that it communicated in a similar fashion to all proposed class members, and that there was similarity in each proposed class member's reliance.  <u>Id</u>.

20

I conclude that the Plaintiffs have the sounder position, at least as to their breach of contract claim.  Discovery has demonstrated that the OTG subsidy was imposed by Defendant upon the great majority of all ASC clients as a matter of general company policy. Plaintiffs maintain that the contractual provisions calling for the imposition of the OTG subsidy upon ASC clients arises from the same course of conduct, and that their representative claims have the same essential character as the claims of the class at large. Even if it is assumed that the language of the contractual provisions imposing the OTG varied from client to client, the imposition of the subsidy upon the great majority of ASC clients represents a single course of conduct that gives rise to the claims of all class members based on the same legal theory (i.e. that the Michigan statute prohibits the OTG). I am, therefore, satisfied that Plaintiffs have met the typicality requirement as to the OTG class.

### (ii) Plaintiffs Denied Claims Records

For reasons similar to those already stated with respect to the numerosity and commonality prerequisites, I conclude that Plaintiffs have not demonstrated typicality with respect to the proposed class of plaintiffs alleged to have been denied comprehensive claims information.  Plaintiffs have simply failed to demonstrate that any other ASC client was denied such access.

### d.   Adequacy of Representation

The fourth and final prerequisite established under Fed.R.Civ.P. 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  The binding effect of court decrees on absent class members raises due process concerns, and

21

the court must satisfy itself that the class representatives will act in the best interests of all members.  See Wright Miller & Kane, Federal Practice and Procedure: Civil 3rd §1765. "What constitutes adequate representation is a question of fact that depends on the circumstances of each case.  The issue should be determined at the earliest practicable time."  Id.  The party seeking class certification bears the burden of establishing all prerequisites, and the court may not assume adequacy of representation.  "There are two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  Senter v. General Motors Corp., 532 F.2d 511, 524-25 (6th Cir. 1976) (citing Gonzales v. Cassidy, 474 F.2d 67, 73 (6th Cir. 1973)).  Courts and commentators have considered a wide range of factors in ruling upon the adequacy of representation in particular cases.  Generally speaking, neither the number of representative parties nor the size of their individual claims in relation to other class members is determinative.  More important considerations include whether the class representatives have: (a) a substantial interest in the matters in controversy; (b) sufficient knowledge and understanding of the issues in suit; (c) the financial capacity to absorb the costs of litigation; (d) shared legal/factual positions and common objectives with the remaining members of the class; and (e) no antagonistic interests or claims which might undermine the interests of the remaining class members.  See Wright, Miller & Kane, supra, §§1765-69.

    I am satisfied that the named Plaintiffs have established their capacity for adequate representation of the proposed class of Defendants ASC clients who were charged (or are

currently being charged) the OTG subsidy.  The central issue in the case is the legality of assessing the OTG against BCBSM's self insured ASC clients.  Plaintiffs clearly have an interest in that issue.  In addition, the individual Plaintiffs, as trustees of a self-insured fund, have sufficient knowledge and understanding of the issues in suit.  The Plaintiff Fund has sufficient capacity to absorb the costs of litigation.  Although the named Plaintiffs have asserted other theories of recovery, including a claim for denial of access to records which I find does not meet the Rule 23(a) prerequisites for class certification, they have no individual interests which are antagonistic to those of the proposed OTG class members.

Plaintiffs' motion recites that its legal counsel "has litigated numerous cases of similar nature and is familiar with the nuances and complexities of such a case." (Plaintiffs' Brief, Page 14).  Many of those cases have been litigated before this court.

Defendant maintains that Plaintiffs have failed to satisfy Rule 23(a)(4) because "the claims of the trust fund are not shown to be common or typical to the claims of the other proposed class members."  (Defendant's Brief, Page 14).  BCBSM maintains that the adequacy of representation requirement overlaps with the typicality requirement because, in the absence of common claims, the class representatives have no incentive to pursue the claims of other members.  Based upon the above considerations, and my rejection of Defendant's position regarding typicality, I conclude that the adequacy of representation test set out in <u>Senter v. Generl Motors Corp.</u>, <u>supra</u>, is satisfied in this case as to the OTG claim.  Further, I find nothing in the moving Plaintiffs' claim for denial of records which is antagonistic to the interests of other proposed class members.

23

### 2.    Rule 23(b) Requirements

Once a party has satisfied the prerequisites set out in Fed.R.Civ.P. 23(a), it may be permitted to pursue a class action if the requirements of at least one section of Fed.R.Civ.P. 23(b) is satisfied.   Rule 23(b)(1), (2), and (3) provide three alternative standards.

### a.    Fed.R.Civ.P. 23(b)(1)

Fed.R.Civ.P. 23(b)(1) permits authorization of a class action when the court determines that it is necessary to prevent possible adverse effects on either (1) the party opposing the class, or (2) absent class members, that would result from individual suits. It is not necessary that the party seeking class certification establish a risk to both absent class members and the adverse party.   Demonstrating the potential for a risk to either classification will suffice.

### (i) Fed.R.Civ.P. 23(b)(1)(A)

Plaintiffs' Motion merely asserts that adjudication of their OTG claims "will, as a practical matter, adjudicate the interests of all ASC plans/groups assessed the cost transfer subsidy . . .." (Plaintiffs' Brief, Page 15).   They offer no factual or legal support for their position.

In contrast, BCBSM cites authority for the proposition that "[t]he possible precedential value of individual actions does not justify certification under Rule 23(b)(1)(A). Bacon v. Honda of Am. Mfg. Inc., 205 F.R.D. 466, 483 (S.D. Ohio 2001).   The fact that some class members might receive damages, while other class members would not, does not justify certification under that subsection.   Employers Ins. of Wausau v. FDIC, 112

F.R.D. 52, 54 (E.D. Tenn. 1986).  Satisfaction of the Rule 23(b)(1)(A) standard "requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts . . ..  Wright, Miller and Kane, Federal Practice and Procedure: Civil 3rd §1773.  "Basically the phrase 'incompatible standards of conduct' is deemed to refer to the situation in which different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct."  Id.

Nothing in Plaintiffs' Reply Brief provides the factual or legal support necessary to establish their position.  Rather, they maintain that "defendant has not disproved the fact that the prosecution of separate actions by the potential class members would create a risk of contradictory and inconsistent rulings regarding the permissibility . . . of the OTG . . .." (Plaintiffs' Reply Brief, Page 5).  The party invoking the class action rule has the burden of showing that all requirements have been satisfied.  Plaintiffs have, quite simply, failed to establish that the standard of Fed.R.Civ.P. 23(b)(1)(A) has been satisfied.

### (ii) Fed.R.Civ.P. 23(b)(1)(B)

The Brief in Support of Plaintiffs' Class Certification Motion asserts that "[b]reach of fiduciary duty claims under ERISA have been deemed an appropriate basis for class certification.  They cite Vanyai v. Mazur, 205 F.R.D. 160, 165 (S.D. NY 2002) and Ortiz v. Fireboard Corp., 527 U.S. 815 (1999).

In response, BCBSM asserts that Plaintiffs have failed to meet the requirements of Rule 23(b)(1)(B).  Defendant relies upon 6th Circuit authority for the proposition that class actions under that subsection are restricted to traditional "limited fund" cases in which there is a "fixed fund in the traditional sense, a fixed resource, such as a mineral deposit, or a

25

fixed amount of money, such as a trust."  (Defendant's Brief, Pages 15-16) (citing Telectronics Pacing Sys., Inc. v. TPLC Holdings, Inc., 221 F.3d 870, 877 (6th Cir. 2000); Ortiz v. Fireboard Corp, 527 U.S. 815, 841-42 (1999).  The court in Telectronics explained in a footnote that "a limited fund exists when a fixed asset or piece of property exists in which all class members have a preexisting interest . . .."  221 F.3d at 877 n.5.  A review of the cases cited by Plaintiffs reveals that each addressed a limited fund situation.  As the facts of this case present no similar circumstance, and Plaintiffs have failed to rebut the arguments and authority cited by Defendant, I conclude that they have failed to satisfy the requirements of Fed.R.Civ.P. 23(b)(1)(B).

### b.   Fed.R.Civ.P. 23(b)(2)

Fed.R.Civ.P. 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied and if

> (2) the party opposing the class has acted or refused to act on grounds that apply to generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ..

Fed.R.Civ.P. 23(b)(2).  Plaintiffs point out that their claims under ERISA §503(a)(2) and (a)(3) include claims for injunctive or declaratory equitable relief.  They assert that, if they establish a breach of Defendant's fiduciary duty, or that the ASC provision regarding the OTG was impermissible as a matter of law, Defendant will be required to make the Plans/Groups whole and take whatever other equitable actions may be ordered by the court.  Thus, Plaintiffs conclude that their ERISA claims may be certified under Rule 23(b)(2).  They further argue that their cause of action for denial of claims records is one for declaratory and injunctive relief, warranting certification under the same provision.

Defendant counters that Rule 23(b)(2) does not apply when the Plaintiffs' predominant claim for relief is for money damages. They maintain, in fact, that injunctive relief is not a remedy available to these Plaintiffs, because BCBSM ceased collecting the OTG subsidy from the trust fund years ago. Defendant relies upon the 1966 advisory committee notes regarding Rule 23(b)(2), which provide, in part, that "[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." In Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 446-48 (6th Cir. 2002), our circuit court noted repeated expressions of concern in Supreme Court opinions over the constitutionality of certifying a mandatory class that includes a claim for money damages. The court observed that "the underlying premise of (b)(2) certification - that the class members suffer from a common injury that can be addressed by classwide relief - begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries." It determined that a critical factor in determining whether injunctive relief predominates "is whether the compensatory relief requested requires individualized damages determination or is susceptible to calculation on a classwide basis."

Defendant also cites Ticor Title Ins. Co. v. Brown, 511 U.S. 117 (1994) and Bacon v. Honda of Am. Mfg., Inc., 205 F.R.D. 466, 484 (S.D. Ohio 2001). Both cases stand for the proposition that, when money damages are at the heart of a lawsuit, the outcome of the case will depend upon findings regarding the individual circumstances of the representative plaintiffs and the class members, and such a focus on individual circumstances is contrary to the general policy behind the class action rule.

27

I am persuaded that Defendant has the stronger position. Under the particular facts underlying the representative Plaintiff's OTG claims, the primary objective of the Second Amended Complaint appears to be the recovery of allegedly wrongful OTG charges. Each class member would require a separate, individual damages calculation. Accordingly, I conclude that class certification pursuant to Fed.R.Civ.P. 23(b)(2) is not warranted with respect to Plaintiffs' OTG claims.

As to the Plaintiffs' second proposed class, (i.e. Plaintiffs denied access to claims records), their failure to meet the prerequisites of Fed.R.Civ.P. 23(a) precludes certification under Rule 23(b), even though the relief requested is injunctive in nature..

### c.    Fed.R.Civ.P. 23(b)(3)

Fed.R.Civ.P. 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

28

Fed.R.Civ.P. 23(b)(3). This is the second subsection of Rule 23 which requires common questions of law and fact. Rule 23(a)(2) requires such common questions as a prerequisite to class action relief. As explained at pages 16-19 of this report, I am satisfied that questions of law and fact common to the class do exist with respect to Plaintiffs' OTG claims.[1] Rule 23(b)(3), however, imposes a higher standard. A class action may be certified under that subsection only if the court determines that the common questions of law and fact predominate over individual questions.

Plaintiffs declare that they have established the necessary predominance, and that they have demonstrated the superiority of a class action over other available methods of adjudication. They argue that it would be "virtually impossible" for the proposed class members to redress their wrongs individually. They assert that class members do not have a special interest in controlling the case and that there is no pending litigation regarding the same matters. Plaintiffs claim that the "same exact proofs are necessary for each class member." (Plaintiffs' Brief, Page 17). They maintain that "the documentary evidence and key witnesses are the same for each allegation by the proposed class members." Id. Finally, they assert that any damages to which class members may be entitled can be easily calculated.

Defendant contests each of Plaintiffs' arguments. They maintain that Plaintiffs have failed to demonstrate the existence of any issues of fact or law common to all members of the class, but argue further that, even if some common questions have been established, the predominance of those questions, as required under Rule 23(b)(3), has not. I reject

---

[1] My finding with respect to Plaintiffs' claim of denial of records is to the contrary.

29

Defendant's initial proposition, based upon my finding that questions of law and fact relating to the alleged statutory prohibition against the OTG subsidy are common to all class members.  I find, however, that Defendant's arguments with respect to predominance are far more substantial and persuasive.

As an initial matter, I would observe that Plaintiffs have failed to establish the Rule 23(a) prerequisites with respect to one of the two proposed classes.  They have simply failed to demonstrate that any proposed class member other than themselves was denied access to claims records.  As to that class, Defendant's argument that no common questions of fact or law have been demonstrated is quite correct.  Clearly, then, Plaintiffs have failed to demonstrate predominance as to such questions.

Defendant also challenges the predominance of factual and legal questions raised in Plaintiffs various OTG claims.  In addition to its position that the charging of an OTG subsidy to any ASC client violates a Michigan statute, Plaintiffs assert claims of breach of fiduciary duty, breach of contract, negligence and/or fraud.

BCBSM observes that it was sued as a fiduciary because of the alleged exercise of discretionary authority or control over plan assets.  Defendant denies that it acted as a fiduciary, and claims that its status is a crucial disputed threshold factual issue specific to these Plaintiffs, and not predominant over individual issues regarding its status as to its other ASC clients.  Defendant argues that "[a] court employs a functional test to determine whether fiduciary status exists under ERISA, which requires a fact intensive inquiry made on a case by case basis."  See, Hamilton v. Carrell, 243 F.3d 992, 998 (6th Cir. 2001); Rankin v. Rots, 278 F.Supp. 2nd 853, 879 (E.D. Mich. 2003); McMorgan and Co. v. First California Mortgage Co., 916 F.Supp. 966, 970 (N.D. Cal. 2006).

30

Defendant further observes that courts have refused to certify a class for negligence and fraud claims which would require individual proofs. BCBSM argues that Plaintiffs made no showing in their class certification motion that the acts of negligence/misrepresentation alleged with respect to them are common to other proposed class members. I agree. BCBSM cites significant case authority in support of its position. See, Kriger v. Gast, 197 F.R.D. 310, 320 (W.D. Mich. 2000) (refusing to certify a class pursuant to Rule 23(b)(3) because claim required proof of individualized reliance); Yadlosky v. Grant Thornton LLP, 197 F.R.D. 292, 301 (E.D. Mich. 2000) (Rule 23(b)(3) requirement of predominance not met where individual issues of reliance would predominate over common issues); Cohn v. Massachusetts Mutual Life Insurance Co., 189 F.R.D. 209, 218 (D. Conn. 1999) (class certification refused in case asserting claims for breach of contract, negligence, and misrepresentation, as the common questions were "over shadowed by individual issues.").

Defendant argues further that, because this court would be obliged to make so many individualized determinations as to proposed class members, Plaintiffs have failed to demonstrate that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Again, I agree. See Cohn, 189 F.R.D. at 218; Peoples v. American Fidelity Life Insurance Co., 176 F.R.D. 637, 645 (N.D. Fla. 1998).

Finally, BCBSM reasserts its position that the members of the proposed class in this case have the ability and incentive to pursue their own claims.

> One of the basic reasons for promulgating Rule 23 was to provide 'small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' When the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device. The

> Rule was not designed to permit large claimants, who are fully capable of proceeding on their own, to strengthen their bargaining position by threatening their adversaries with the prospect of class wide relief and large attorney fee awards.

Stoudt v. E.F. Hutton and Co., Inc., 121 F.R.D. 36, 38 (S.D. N.Y. 1988).

Upon consideration of the parties' arguments, I conclude that Plaintiffs have failed to satisfy the requirements of Fed.R.Civ.P. 23(b)(3).

### D.   Conclusion

This court is vested with substantial discretion in determining whether or not to certify a class under Fed.R.Civ.P. 23. For the reasons discussed above, I conclude that the court should exercise its discretion in this case by denying Plaintiffs' Motion for Class Certification.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th

32

Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: February 13, 2009

_____

### CERTIFICATE OF SERVICE

I hereby certify on February 13, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 13, 2009: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217