UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIPEFITTERS LOCAL 636 FUND, ET AL.,

    Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

    Defendant.
_____/

Case No. 04-73400

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

### ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT/SUMMARY JUDGMENT [201]

Before the Court is Plaintiffs' Motion for Judgment/Summary Judgment [201]. For the reasons stated below, Plaintiffs' Motion for Judgment/Summary Judgment is GRANTED.

### I. Procedural History

On September 3, 2009, this Court entered an Order [127] granting Plaintiffs' Motion to Certify Class [74] and granting in part Plaintiffs' Motion for Summary Judgment [96]. Defendant Blue Cross Blue Shield of Michigan appealed the class certification to the United States Court of Appeals for the Sixth Circuit. On August 12, 2011, the Court of Appeals issued an opinion [184] reversing class certification. A mandate [185] was issued from the Sixth Circuit on September 28, 2011.

Subsequently, a status conference was set by the Court for December 12, 2011, to facilitate discussion regarding the status of the case. At the status conference, Plaintiffs informed the Court that they intended to file a petition for a writ of certiorari to the Supreme Court. On March 19, 2012, the Supreme Court denied the petition for a writ of certiorari. On January 9, 2012, and May 11, 2012, Motions to Intervene [191] and [197] were filed, respectively, by the Sheet Metal Workers Local Union No. 80 and the Board of Trustees of the Michigan Regional Council of Carpenters

Employee Benefit Fund. The Court denied said motions in an Order [198] issued on May 16, 2012. Plaintiffs filed the instant motion [201] on July 6, 2012.

## II. Analysis

The Court previously addressed summary judgment in its Order [127] issued on September 3, 2009, finding Defendant liable for damages caused by its breach of fiduciary duty in assessing the "Other than Group" fee in violation of Michigan law. The Court granted summary judgment to Plaintiffs on this issue. The only issue before the Court in Plaintiffs' current motion is the question of damages.

### Improperly-Assessed OTG Fees

Based on the Court's prior ruling, the parties agree that the total "Other than Group" fee collected from Plaintiffs is $284,970.84. The Court therefore finds that Defendant Blue Cross Blue Shield of Michigan is liable to Plaintiffs for the full $284,970.84. The disputed question before the Court is the proper method of determining the interest owed by Defendant to Plaintiffs.

### Proper Interest Rate

Plaintiffs contend that the proper interest rate is governed by Mich. Comp. Law § 600.6013, which governs "interest on a money judgment in a civil action" and sets the rate of interest at six-month variances and equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the six months prior to July 1 and January 1 of the year at issue. Mich. Comp. L. § 600.6013(8). As presented by Plaintiffs, the Michigan rate of interest, during the period from September 1, 2004 to January 1, 2012, ranged from 2.083% to 5.815%. This interest rate results in accrued interest on the wrongfully-collected OTG fees of $106,960.78. Such an interest rate was applied in *Safran v. Donagrandi*, No. 08-12366, 2009 WL 1133462, at *2 (E.D. Mich. April 27, 2009) (Duggan, J.).

Defendant argues that the Court should instead utilize the "Federal Rate" as set forth in 28 U.S.C. § 1961, which permits interest on any money judgment in a civil case recovered in a district court. The rate is determined according to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment. In the instant case the § 1961 rate varies from 1.16% to 2.77% during the applicable period. This would result in $30,157.95 of accrued interest. The Sixth Circuit has approved the use of the § 1961 rate in the past. *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).

Plaintiffs also argue that 26 U.S.C. § 6621(a)(1) provides an alternative method of assessing the proper rate of interest.[1] According to § 6621(a)(1) the proper rate of interest should be determined by adding 3% to the Federal short-term rate, determined on a monthly basis as the average market yield on outstanding marketable obligations of the United States with a remaining period to maturity of three years or less. Plaintiffs do not provide this particular rate of interest for the applicable period.

It is well-recognized law in the Sixth Circuit that "the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles." *Rybarczyk*, 235 F.3d at 985 (quoting *Ford v. Uniroyal*, 154 F.3d 613, 615 (6th Cir. 1998)) (brackets in original). While a court should not "simply adopt[] state law interest rates," the court should "compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Rybarczyk*, 235 F.3d at 985 (quoting *Ford*, 154 F.3d at 618).

---

[1] While 26 U.S.C. § 6621(a)(1) concerns the proper rate of interest on tax overpayments, the Court notes that the rate has been used by other courts in this district as a benchmark for "the objective measure of the value of money." *See Safran v. Donagrandi*, No. 08-12366, 2009 WL 1133462, at *2 (E.D. Mich. April 27, 2009). *See also Russo v. Unger*, 845 F. Supp. 124, 126-27 (S.D.N.Y. 1994) (discussing use of § 6621(a)(1) rate of interest in ERISA context).

-3-

Courts in this district have used the Michigan rate to properly compensate plaintiffs. *See Safran*, 2009 WL 1133462, at *2. Courts have also used the § 1961 rate. *See Rybarcyzk*, 235 F.3d at 986. The primary consideration in choosing between different rates is to "compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Id.* at 985. Thus, contrary to Defendant's assertion, the Sixth Circuit has not endorsed "the inapplicability of the Michigan rate." Def.'s Resp. at 6. Rather, this Court must determine what rate will best approximate the present value of the money lost to Plaintiffs, and must make sure that Defendant does not benefit from its improper assessment of fees. As noted by the Sixth Circuit in *Rybarcyzk*, "[u]sing the interest rate actually realized by [the defendant] on the relevant funds seems an appropriate way of avoiding unjust enrichment." This Court is only cautioned from using a rate that is "much higher than prevailing market rates of return." *Id.* at 986 (citing *Ford*, 154 F.3d at 617) (holding that Michigan rate, at that time 12% was punitive because it was meant to compensate the winner for litigation expenses and was higher than market rate of 9%).

In *Rybarcyzk* the Sixth Circuit approved a district court's determination that, to avoid unjust enrichment, the defendant should be required to disgorge interest equal to either the § 1961 rate or the actual rate of interest realized by the defendant, whichever was higher. The court found the § 1961 rate reasonable, and also reasoned that using the defendant's actual rate of return "merely deprives [the defendant] of its profit on the wrongfully denied benefits." *Rybarcyzk* thus stands for the proposition that a district court has the discretion to fashion a remedy sufficient to prevent unjust enrichment. The Court is also mindful that, in general in situations of restitution and to prevent unjust enrichment, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." *FTC v. Verity Intern, Ltd.*, 443 F.3d 48, 69 (2d Cir. 2006) (quoting *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997)).

-4-

Here, the parties present the Court with several options. Mindful that the ultimate goal of determining the correct interest rate is to ensure proper compensation for the money lost by Plaintiffs, and to prevent unjust enrichment by the Defendant, the Court finds the following arrangement will best meet these dual goals:

Defendant will, within 30 days of this order, pay to Plaintiffs the $106,960.78 in interest owed according to the Michigan rate of return. The Court finds that this amount will properly compensate Plaintiffs for their losses while preventing unjust enrichment, as the Michigan rate lies between the two federal rates that have been used by other courts to determine the value of unjustly retained money. Defendant has provided no compelling reason why the Michigan rate would overcompensate Plaintiffs; indeed, the Michigan rate is, at times, lower than the high end of the § 1961 federal rate.[2] As such, the Court finds the Michigan rate appropriate.

However, Defendant may, within 30 days, present specific evidence to the Court establishing its actual rate of return on the OTG fees improperly assessed against Plaintiffs. If the Court is satisfied at that time that Defendant has properly calculated its rate of return, the judgment will be modified to accord with Defendant's actual rate of return.

**Alleged Periods of Delay**

Defendant argues that this Court should award pre-judgment interest only through September 1, 2009, because it has been "**two years and ten months** after the Court ruled on [Defendant's] individual liability and **eleven months** after the Sixth Circuit remanded the case for an order of final judgment." Def.'s Resp. at 4 (dramatic bolding in original). In *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1170 (6th Cir. 1996) the court found that prejudgment interest should be awarded

---

[2]As noted above, the § 1961 rate has, during the applicable period, ranged from 1.17% to 2.67%, while the Michigan rate has ranged from 2.083% to 5.815.

-5-

as "a sort of backpay." "Discrimination victims should not be penalized for delays in the judicial process and discriminating employers should not benefit from such delays." *Id.* However, a court should not award prejudgment interest "for delays specifically attributable to the plaintiff." Defendant thus appears to argue that any delay in this case following the Court's September 1, 2009 order is "specifically attributable to the plaintiff."

The Court finds that the period between September 1, 2009, when the Court entered an order granting partial summary judgment to Plaintiffs and approving class certification, and September 28, 2011, when the Court of Appeals issued the mandate in its decision reversing this Court's grant of class certification, is not specifically attributable to Plaintiffs. Rather, it appears to be almost solely attributable to Defendant's appeal of this Court's class certification order and the subsequent appellate litigation. Defendant argues that, rather than waiting to determine whether class certification would survive, the individual Plaintiffs should have moved for an final judgment. The Court declines to find that Plaintiffs' decision to forego this route, which would have resulted in possibly contorted procedural issues,[3] constitutes the type of "delay" that a denial of prejudgment interest is intended to punish.

Indeed, the Sixth Circuit has made clear that a delay must be specifically attributable to the actions of a plaintiff to constitute a reason for denial of prejudgment interest. A wrongdoer "is not entitled to an interest free loan as to relief awarded." *Shore v. Federal Exp. Corp.*, 42 F.3d 373, 380 (6th Cir. 1994) (citing *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 841-42 (6th Cir. 1994)). Plaintiffs are not to be penalized for delays attributable to a defendant or to the judicial process. *Id.*

---

[3]Such as if Plaintiffs had been awarded a final judgment and class certification had been upheld by the Sixth Circuit. Defendant could then have argued that Plaintiff Pipefitters no longer had standing, its injury having already been remedied.

Rather, the courts have cited plaintiffs taking "an inordinate amount of time" for an investigation (in *Wilson*, four years) as a reason for a finding of delay.

Here, Defendant provides no case law supporting the argument that a proposed class representative should pursue an individual final judgment when a defendant takes an interlocutory appeal of class certification. Moreover, Defendant provides no argument that pursuit of appellate remedies constitutes delay attributable to the Plaintiffs rather than delay attributable to the "judicial process." The Court therefore does not find this delay attributable to Plaintiffs.

Following the mandate from the Court of Appeals, the Court, on its own initiative, scheduled a conference to determine the status of the case. A Notice to Appear was docketed on November 17, 2011. At the December 12, 2011 conference Plaintiffs informed the Court of their intention to petition the Supreme Court for a writ of certiorari. Having thus been advised, the Court determined that no action in the case could proceed until resolution of Plaintiffs' petition. Defendant did not suggest or request that, at that time, Plaintiffs seek an entry of final judgment. Again, the Court finds any delay in the Supreme Court's consideration of Plaintiffs' petition attributable to "the judicial process" rather than Plaintiffs.

Plaintiffs petition for writ of certiorari was denied on March 19, 2012. In the meantime, two Motions to Intervene by various former prospective class members were filed, first on January 9, 2012, and then on May 16, 2012. These Motions to Intervene were denied by the Court on May 17, 2012, at which point the Court requested another status conference with the parties. At this status conference, on May 30, 2012, Plaintiffs stated their intention to seek a final judgment. On July 6, 2012, Plaintiffs filed their Motion for Judgment/Summary Judgment.

The Court does not find that the delay during the period from March 19, 2012 to July 6, 2012, a period of less than four months, to be attributable to Plaintiffs. The Court finds the delay

pending the Court's decision on the Motions to Intervene to be due to "the judicial process" rather than solely attributable to Plaintiffs.

Thus, the only remaining period at issue is between the Court's denial of intervention on May 17, 2012, and the filing of Plaintiffs' Motion for Judgment on July 6, 2012. While this period is no doubt attributable to Plaintiffs, the Court does not find that a period 6 weeks constitutes the sort of "inordinate" delay that has caused courts to deny prejudgment interest in the past. Defendant cites no authority for the proposition that Plaintiffs must, having reached a stage in litigation where a motion for judgment is appropriate, instantly file said motion or open themselves to penalties for "delay."

Accordingly, the Court awards prejudgment interest, as discussed above, during the full period of this litigation, and declines to deny prejudgment interest based on Defendant's arguments concerning alleged delay by the Plaintiffs.

### III. Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant will, within 30 days of this order, pay to Plaintiffs the $284,970.84 in improperly-assessed OTG fees and $106,960.78 in interest owed according to the Michigan rate of return. The Court finds that this amount will properly compensate Plaintiffs for their losses while preventing unjust enrichment, as the Michigan rate lies between the two federal rates that have been used by other courts to determine the value of unjustly retained money. Defendant has provided no reason why the Michigan rate would overcompensate Plaintiffs; indeed, the Michigan rate is, at times, lower than the high end of the § 1961 federal rate.[4]

---

[4] As noted above, the § 1961 rate has, during the applicable period, ranged from 1.17% to 2.67%, while the Michigan rate has ranged from 2.083% to 5.815.

However, Defendant may, within 30 days, present specific evidence to the Court establishing its actual rate of interest on the OTG fees improperly assessed against Plaintiffs. If the Court is satisfied at that time that Defendant has properly calculated its rate of return, the judgment will be modified to accord with Defendant's actual rate of return.

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: September 7, 2012 | Senior United States District Judge |

---

**CERTIFICATE OF SERVICE**

I hereby certify on September 7, 2012 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 7, 2012: **None.**

            s/Michael E. Lang
            Deputy Clerk to
            District Judge Arthur J. Tarnow
            (313) 234-5182